In re Carl Jackson **HARRIS**, Jr. d/b/a C & J Harris Underground Construction and Julie Ann Harris, Debtors.

Bankruptcy No. 93–2000–BKC–3P3.

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

April 11, 1994.

Richard A. Perry, Ocala, FL, for debtors.

Harris L. Bonnette, Jr., Jacksonville, FL, for I.R.S.

Mamie L. Davis, Jacksonville, FL, Chapter 13 Trustee.

*FINDINGS OF FACT AND CONCLUSIONS OF LAW*

GEORGE L. PROCTOR, Bankruptcy Judge.

This case came before the Court upon debtors' objection to claim 11 filed by the United States of America for its Internal Revenue Service ("IRS"). The Court held a hearing on March 16, 1994, and upon a stipulation of facts, the Court enters findings of fact and conclusions of law:

*Stipulation of Findings of Fact*[1]

The parties agree to this stipulation of facts. All stipulated facts shall be conclusive.

1. The debtors filed their 1989 federal income tax return on April 15, 1990.

2. The debtors' income tax liability for taxable year 1989 as of April 30, 1993, is $35,628.21 of which $15,702.86 is secured pursuant to the Court's Order Granting Motion to Value Collateral, a copy of which is attached herewith as Exhibit 1.[2]

3. Attached herewith as Exhibit 2 is a copy of the Internal Revenue Service's amended proof of claim in this case filed on October 22, 1993.

4. The petitioners filed their current Chapter 13 case, Case No. 93–02000–BKC–3P3, on April 30, 1993.

5. The debtors filed a previous Chapter 13 bankruptcy petition on October 26, 1990, and was given case number 90–4424–BKC–3P3.

6. The debtors' prior bankruptcy, Case No. 90–4424–BKC–3P3, was ultimately dismissed by the debtors on June 29, 1992.

---

1. The stipulation of the parties is reproduced verbatim. Errors in sentence structure or style are as submitted by the parties and are not corrected by the Court.

2. The Court has not attached copies of the exhibits referred in the stipulation.

7. The debtors filed their Objection to Claim Number 11 Filed by the Internal Revenue Service on October 7, 1993.

8. The parties agree that the sole issue in the debtors' Objection to the Internal Revenue Service's proof of claim filed on October 7, 1993, is whether the debtors' prior bankruptcy case tolled the three-year period provided in 11 U.S.C. § 507(a)(7)(A)(i).

*Additional Findings of Fact by the Court*

The IRS filed claim 11 on August 27, 1993, and debtors objected to that claim on October 12, 1993. The IRS filed claim 14 on October 22, 1993, in the amount of $56,722.45. Claim 14 is comprised of a secured claim in the amount of $15,702.86, an unsecured priority claim in the amount of $38,107.42 and an unsecured claim in the amount of $3,002.17. The parties stipulate that claim 14 supersedes claim 11, that debtors' objection to claim 11 shall be treated as an objection to claim 14 and that any further pleading shall be treated as an objection to claim 14 without the need to amend the pleading.

*Conclusions of Law*

Debtors argue that their debt to the IRS is not a priority claim pursuant to § 507(a)(7)(A)(i) because their tax return for 1989 was due more than three years prior to their filing this, their second, chapter 13 case.

Section 507(a)(7)(A)(i) states:

(a) The following expenses and claims have priority in the following order:

(7) Seventh, allowed unsecured claims of governmental units, only to the extent such claims are for—

(A) a tax on or measured by income or gross receipts—

(i) for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions after three years before the date of the filing of the petition;

11 U.S.C. 507(a)(7)(A)(i). Thus only if debtors' tax return is last due within three years of filing for relief would their 1989 tax debt be entitled to priority status. Clearly, the return due and filed on April 15, 1990, is outside the three-year period which expired April 15, 1993, because debtors filed this case on April 30, 1993, fifteen days after the three-year period expired. .

The IRS argues, however, that § 108(c) applies 26 U.S.C. § 6503 in a bankruptcy case and acts to suspend the time period contained in § 507(a)(7) for the time that debtors' previous case was pending. Thus debtors' 1989 tax debt is entitled to priority status. Section 108(c) states in relevant part:

(c) Except as provided in 524 of this title, if applicable nonbankruptcy law, ... fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor, ... and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of—

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

(2) 30 days after notice of termination or expiration of the stay under section 362 ... with respect to such claim.

Internal Revenue Code sections are § 6502(a), 6503(b), § 6503(h) state in relevant part:

§ 6502 Collection after assessment.

(a) Length of period. Where the assessment of any tax imposed by this title has been made within the period of limitation ·properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun—

(1) within 10 years after the assessment of the tax, ...

§ 6503 Suspension of running of period of limitation.

(b) Assets of taxpayer in control or custody of court. The period of limitations on collection after assessment prescribed in section 6502 shall be suspended for the period the assets of the taxpayer are in the control or custody of the court in any proceeding before any court of the United

States or of any State or of the District of Columbia, and for 6 months thereafter.

(h) Cases under title 11 of the United States Code. ·The running of the period of limitations provided in section 6501 or 6502 on the making of assessments or collection shall, in a case under titled 11 of the United States Code, be suspended for the period during which the Secretary is prohibited by reason of such case from making the assessment or from collection and—

    (1) for assessment, 60 days thereafter, and

    (2) for collection, 6 months thereafter.

The issue the Court must determine is whether the application of § 108(c) suspends the three-year priority period contained in § 507(a)(7) during debtors' previous bankruptcy.

### Case Law

The first case to address this issue was *In re Brickley,* 70 B.R. 113 (9th Cir. BAP 1986). The *Brickley* court first noted that § 108(c) extends the statute of limitations for creditors in actions against the debtor where the automatic stay has hampered the creditor's ability to pursue an action. The court then examined 26 U.S.C. § 6503(b) which suspends the running of the time allowed for collection of tax liability for the period that the taxpayer's assets are under the control or custody of another court plus six months. The court held, based upon the legislative history of § 108(c), which expressly states that the suspension contained in § 6503(b) applies in bankruptcy, that § 108(c) suspends the running of the three-year period contained in § 523 and § 507.

Most courts that have addressed this issue have concluded as did the *Brickley* court, that § 108(c) acts to suspend the running of the priority period. *In re West,* 5 F.3d 423 (9th Cir.1993); *In re Montoya,* 965 F.2d 554 (7th Cir.1992); *In re Ringdahl,* 313 Bankr. L.Rep. (CCH) ¶ 74,082, 1991 WL 284105 (Bankr.M.D.Fla.1991); *In re Grogan,* 158 B.R. 197 (Bankr.E.D.Cal.1993); *Molina v. U.S.,* 99 B.R. 792 (S.D.Ohio 1988); *In re Florence,* 115 B.R. 109 (Bankr.S.D.Ohio 1990); *In re Deitz,* 116 B.R. 792 (D.Colo. 1990); *In re Quinlan,* 107 B.R. 300 (Bankr. Colo.1989); *In re Ross,* 130 B.R. 312 (Bankr. Neb.1991).

### Application

Debtors concede that the case law, whether successive filings toll the time periods contained in §· 507, supports the IRS position. However, debtors urge the Court to adopt the reasoning of the Bankruptcy Court in *In re Deitz,* 106 B.R. 236 (Bankr.D.Colo. 1989), rev'd *In re Deitz,* 116 B.R. 792 (D.Colo.1990). The *Deitz* court held that the time period in § 507(a)(7) is not a collection period or statute of limitation but merely a measure of tax years for which priority will be afforded in bankruptcy. The court also held that the extension of the period in § 507(a)(7) through § 108(c) is inconsistent with the language of § 108(c) because the extension of § 507(a)(7) time periods is an extension of bankruptcy law and not non-bankruptcy law as § 108(c) requires. Similarly, debtors argue that the time period contained in § 507 is not a collection period as is addressed in 26 U.S.C. § 6503, thus, even if § 108(c) could be used to extend the priority period, application of § 6503 is inappropriate.

The Ninth circuit explained this seeming inconsistency between the statutory language and the outcome in *Brickley* in *In re West,* 5 F.3d 423 (9th Cir.1993). The court held that the interplay between § 108(c) and § 507(a)(7) presents one of the rare cases in which the literal application of a statute is at odds with the intention of the statute's drafters and, in such a case, the Court must look to the intention behind the statute not just the statutory language. *Id.* Similarly, in *In re Grogan,* 158 B.R. 197, 202 (Bankr.E.D.Cal. 1993) the court noted:

The literal reading and application of section 108(c) of the reversed *Deitz* decision is appealing, but this court agrees with established judicial interpretation regarding the applicability of section 108(c) in determining priority taxes. The Grogans properly state that section 108(c) applies to non-bankruptcy law, accurately report that section 507(a)(7)(A)(i) is bankruptcy law and correctly argue that section 507(a)(7)(A) is

not a statute of limitations. However, they ignore both congressional policy in passing section 108(c) and the reality of what can occur when a statute of limitations is suspended without the time period for determining tax priority being suspended as well.

The Court agrees with these courts that a literal application of § 108 and § 507 frustrates the purpose in creating the priority period and applying limitation periods in bankruptcy.

The plain language of the statute clearly supports debtors' argument that the extension of the time periods in § 507 is improper because § 507 is not non-bankruptcy law. It is also clear that Congress intended to protect the collection period given to the IRS by enacting § 108(c). In discussing the purpose of § 108(c) the drafters specifically referred to the suspension of the collections time being applied in bankruptcy through § 108(c) and, in discussing minimization of administrative problems in the collection process, the Senate Report again refers to § 108(c)'s suspension of the collection period during bankruptcy. S.Rep. No. 989, 95th Cong., 2d Sess. 14–15, 30–31 (1978), *reprinted in* 1978 U.S.Code, Cong. & Admin.News, 5787, 5800–5801, 5816–5817.

Likewise the Court agrees that the time period contained in § 507 is not, on its face, a collection period or a statute of limitation. However, this interpretation is inconsistent with the intent of congress in creating a limited period for priority status to accrue for taxes. Priority status was created to balance the tension created between general creditors' rights to funds, a debtor's fresh start and the tax collector who has not had a reasonable time to collect or has been restrained by law from collecting taxes which have not grown so "stale" as to constitute an unjustifiable burden on unsecured creditors. S.Rep. No. 989, 95th Cong., 2d Sess. 14, (1978), *reprinted in* 1978 U.S.Code, Cong. & Admin.News, 5800. Because the three-year period in § 507 only has meaning if it is a collection period since "collectibility is obviously useless if the tax debt has been discharged," the failure to apply the suspension of § 6203(h) through § 108(c) would frustrate the purpose of creating the priority and dischargeability provisions. *In re Brickley* at 115.

In addition, to hold otherwise invites abuse. Debtors would be able to avoid paying their taxes through successive filings. *In re Grogan,* 158 B.R. 197 (Bankr.E.D.Cal. 1993); *In re Brickley,* 70 B.R. 113 (9th Cir. BAP 1986). Again, congress made clear its intention that such abuse was to be avoided, stating:

> "The tax systems, generally based on voluntary assessment, work to the extent that the majority of taxpayers think they are fair. This presumption of fairness is an asset which should be protected and not jeopardized by permitting taxpayers to use bankruptcy as a means of improperly avoiding tax debts."

S.Rep. No. 989, 95th Cong., 2d Sess. 14, (1978), *reprinted in* 1978 U.S.Code, Cong. & Admin.News, 5800. Accordingly, the Court holds that a previous bankruptcy case stays the running of the priority period in § 507(a)(7) and 523(a)(1).

*Conclusion*

The Court holds that the time period contained in § 507(a)(7) is extended by the time debtors' first case was pending and the time that debtors' current case has been pending. Although debtors are correct that § 507 refers to the time for filing a return, this time frame only has meaning as a collection period and, consistent with congressional intent, the Court holds that § 108(c) acts to suspend the running of the three-year collection period in § 507. Accordingly, the Court holds that $38,017.42 of the claim filed by the IRS is entitled to priority status and will enter a separate order consistent with these findings of fact and conclusions of law.