**In re Hugh Cunningham HOLLOWELL, Jr. and Teresa Seeman Hollowell.**

**Hugh Cunningham HOLLOWELL, Jr. and Teresa Seeman Hollowell, Plaintiffs,**

v.

**INTERNAL REVENUE SERVICE, United States Attorney, and Janet Reno, Attorney General, Defendants.**

Bankruptcy No. 95–12609.
Adversary No. 95–1318.

United States Bankruptcy Court,
N.D. Mississippi.

March 28, 1998.

B. Brennan Horan, Horn Lake, MS, for plaintiffs.

Ralph M. Dean, Asst. U.S. Atty., Oxford, MS, for defendants.

## *OPINION*

DAVID W. HOUSTON, III, Bankruptcy Judge.

This matter comes before the court for a determination of the limited issue of whether the filing of a previous Chapter 7 bankruptcy case by the debtors, Hugh Cunningham Hollowell, Jr., and Teresa Seeman Hollowell, tolled the running of the limitations period applicable to the dischargeability of delinquent federal tax obligations; the matter having been submitted to the court by agreement of the parties through a stipulation of undisputed facts; and the court having reviewed same, as well as, the respective memoranda finds as follows, to-wit:

### I.

The court has jurisdiction of the subject matter of and the parties to this adversary proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(I).

### II.

The parties have stipulated to the following facts:

1. That the debtors filed their current Chapter 7 bankruptcy in the Northern District of Mississippi on September 12, 1995, in case number 95–12609. The debtors previously filed a Chapter 7 case, number 95–10314, on February 7, 1995, which was voluntarily dismissed on June 22, 1995. The prepetition tax liabilities including penalties and interest are: 1986—$17,642.05; 1987—$30,343.93; 1988—$28,147.41; 1989—$13,758.83; 1992—$692.14.

2. That the debtors signed a Waiver of Restrictions on Assessment and Collection of Deficiency in tax and acceptance of over assessment on July 9, 1993.

3. That the income tax returns were filed on the following dates: 1986—06/08/93; 1987—04/27/93; 1988—04/27/93; 1989—04/27/93; 1992—03/08/95. The due dates for such years are as follows: 1986—04/27/87 (pursuant to extension); 1987—04/15/88 (no extension); 1988—05/26/89 (pursuant to extension); 1989—08/15/90 (pursuant to extension); 1992—08/15/93 (pursuant to extension). All of the returns were delinquent when filed.

4. That the court should examine the sole issue of tolling per briefs to be submitted by the parties.

5. The United States (hereinafter "IRS") has filed a notice of tax lien with respect to the 1986, 1987, 1988 and 1989 liabilities.

6. According to the attorneys of record, a trial would last approximately one half day. There would be no need for witnesses other than the debtors. Further, it is the attorneys' opinion that briefing would preclude the necessity for a hearing in this matter. Both attorneys waive formal argument, and ask the court to enter an opinion in writing or by phone conference.

### III.

Section 523(a)(1) [1] provides as follows:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

    (1) for a tax or a customs duty—

        (A) of the kind and for the periods specified in section 507(a)(2) or 507(a)(8) of this title, whether or not a claim for such tax was filed or allowed;

        (B) with respect to which a return, if required—

        (i) was not filed; or

        (ii) was filed after the date on which such return was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition; or

        (C) with respect to which the debtor made a fraudulent return or wilfully

---

1. Unless otherwise indicated, all code citations are to Title 11 of the United States Code Annotated.

attempted in any manner to evade or defeat such tax.

Section 507(a)(8)(A) provides as follows:

(a) The following expenses and claims have priority in the following order:

(8) Eighth, allowed unsecured claims of governmental units, only to the extent that such claims are for—

(A) a tax on or measured by income or gross receipts—

(i) for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition;

(ii) assessed within 240 days, plus any time plus 30 days during which an offer in compromise with respect to such tax that was made within 240 days after such assessment was pending, before the date of the filing of the petition; or

(iii) other than a tax of a kind specified in section 523(a)(1)(B) or 523(a)(1)(C) of this title, not assessed before, but assessable, under applicable law or by agreement, after, the commencement of the case.

The issue presented for adjudication is whether the two year limitations period contained in § 523(a)(1)(B)(ii), should be tolled for the period of time during which the debtors' previous Chapter 7 case was pending. As noted in the stipulation of undisputed facts, the debtors filed a previous Chapter 7 case on February 7, 1995; it was voluntarily dismissed on June 22, 1995. The above captioned case was filed on September 12, 1995. During the existence of the prior Chapter 7 case, the IRS was prevented by the automatic stay from attempting to collect the tax obligations owed by the debtors.

Although not stipulated, the IRS asserts that the first Chapter 7 case and a pending adversary proceeding, seeking a determination that the federal income taxes were dischargeable, were voluntarily dismissed by the debtors when they discovered that the taxes were obviously not dischargeable because of the proscription set forth in § 523(a)(1)(B)(ii). The IRS alleges that the debtors then waited until the two year period had run before re-filing the present Chapter 7 case and an identical adversary proceeding.

The debtors state in their brief that a question arose after they filed the original case as to when they executed the amended waiver of restrictions on assessment and collection. Candidly, they admit that upon the advice of counsel, they elected to dismiss the previous case and adversary proceeding with the intent of refiling sometime after July 9, 1996[2]. In the opinion of the court, the dismissal and refiling were done purposely to circumvent the effect of the two year limitations period set forth in § 523(a)(1)(B)(ii).

The IRS does not dispute that the 1986 through 1989 penalty and pre-petition interest portions of its claim are dischargeable. Conversely, the IRS asserts that the tolling issue has no effect on the 1992 taxes, including the related penalty and pre-petition interest, because these obligations were due within three years before the date of the bankruptcy filing, and are clearly non-dischargeable pursuant to § 507(a)(8)(A)(i) and § 523(a)(1)(A). In addition, the untimely return was filed within two years of the date of the bankruptcy filing. The court concurs.

The 1986 through 1989 taxes are directly affected by the tolling issue. The 1986 return was delinquently filed on June 8, 1993. Accordingly, since the first case was filed on February 7, 1995, the two year "look-back" rule of § 523(a)(1)(B)(ii) was obviously applicable. As of the petition date of the prior case, only one year and 244 days of the two year period had run. If tolling is not allowed, the remaining 121 days of the two year period would have expired before the date that the present case was filed. If the two year period is tolled for the days that the debtors were in the prior case, the filing of the 1986 return is within the two year period and the taxes would be excepted from discharge.

---

2. The parties stipulated that the debtor executed a Waiver of Restrictions on Assessment and Collection of Deficiency, three years earlier, on July 9, 1993.

The returns for 1987, 1988, and 1989 were filed on April 27, 1993, within two years of the initial bankruptcy filing. As of the original petition date, one year and 286 days of the two year period had run leaving seventy-nine days remaining. If tolling is not allowed, the returns for 1987, 1988, and 1989 would clearly have been filed more than two years before the date of the present Chapter 7 case, which was filed eighty-two days after the dismissal of the first case. As such, even if tolling were allowed for the number of days that the debtors' previous case was pending, the returns for 1987, 1988, and 1989 would still have been filed more than two years before the present case. To counter this scenario, the IRS posits that an additional six month tolling period, provided by 28 U.S.C. § 6503(b) and (h), has been activated.[3] Thus, if tolling is allowed for the period of time that the debtors' prior case was pending, as well as, if 28 U.S.C. §§ 6503(b) and (h) extend the tolling period an additional six months, the 1987, 1988, and 1989 tax liabilities would also be excepted from discharge.

### IV.

This court could find only three reported decisions addressing the tolling of the two year look-back period of § 523(a)(1)(B)(ii). In all three, *Tibaldo v. United States of America (In re Tibaldo)*, 187 B.R. 673 (Bankr.C.D.Cal.1995); *Teeslink v. United States of America (In re Teeslink)*, 165 B.R. 708 (Bankr.S.D.Ga.1994); and *In re Stoll*, 132 B.R. 782 (Bankr.N.D.Ga.1990), § 108(c) of the Bankruptcy Code was applied to toll the two year period for the length of time that the debtors' prior bankruptcy cases were pending. In each of these decisions, the two year period was further tolled for an additional six months because of 28 U.S.C. § 6503(b) and (h).

By way of analogy, there are numerous published opinions addressing the issue of whether the *three year* period of § 507(a)(8)(A)(i) is tolled by the filing of a prior bankruptcy case. Most of these decisions have held that the limitations period is tolled. *In re Taylor*, 81 F.3d 20 (3d Cir. 1996); *Montoya v. U.S. (In re Montoya)*, 965 F.2d 554 (7th Cir.1992); *U.S. v. Richards (In re Richards)*, 994 F.2d 763 (10th Cir.1993); *In re Waugh*, 109 F.3d 489 (8th Cir.1997); *In re McMillan*, 204 B.R. 835 (Bankr.M.D.Ga. 1996); *In re Darden*, 202 B.R. 715 (Bankr. E.D.Va.1996); *In re Cowart*, 199 B.R. 799 (Bankr.M.D.Fla.1996); *In re Brickley*, 70 B.R. 113 (9th Cir. BAP 1986); *In re Grogan*, 158 B.R. 197 (Bankr.E.D.Cal.1993); *Molina v. U.S.*, 99 B.R. 792 (S.D.Ohio 1988); *In re Harris*, 167 B.R. 680 (Bankr.M.D.Fla.1994); *In re Eysenbach*, 183 B.R. 365 (W.D.N.Y. 1995); *In re Ramos*, 208 B.R. 655 (W.D.Tex. 1996); *In re Strickland* 194 B.R. 888 (Bankr.D.Idaho 1996); *In re Shedd*, 190 B.R. 692 (Bankr.M.D.Fla.1996); *In re Sirman*, 171 B.R. 403 (Bankr.M.D.Fla.1994); *In re Reed*, 165 B.R. 959 (Bankr.N.D.Ga.1993); *In re Rangel*, 209 B.R. 744 (Bankr.D.Colo.1997); *In re Zecco*, 211 B.R. 109 (Bankr.D.Mass. 1997). Some of the decisions relied on § 108(c) to toll the running of the three year period. Others looked to the equitable power conveyed to the court pursuant to § 105(a) as authority for tolling.

Other courts, including the Fifth Circuit, have held that the three year period in § 507(a)(8)(A)(i) cannot be tolled in reliance on the provisions of § 108(c). *Quenzer v. United States (In re Quenzer)*, 19 F.3d 163 (5th Cir.1993); *In re Pastula*, 203 B.R. 941 (Bankr.E.D.Mich.1997); *Turner v. United States (In re Turner)*, 182 B.R. 317 (Bankr. N.D.Ala.1995), adhered to on reconsideration, 195 B.R. 476 (Bankr.N.D.Ala.1996); *Clark v.*

---

**3.** 26 U.S.C. § 6503(b) and (h) provides:

(b) Assets of taxpayer in control or custody of court.—The period of limitations on collection after assessment prescribed in section 6502 shall be suspended for the period the assets of the taxpayer are in the control or custody of the court in any proceeding before any court of the United States or of any State or of the District of Columbia, and for 6 months thereafter.

(h) Cases under Title 11 of the United States Code—The running of the period of limitations provided in section 6501 or 6502 on the making of assessments or collection shall, in a case under Title 11 of the United States Code, be suspended for the period during which the Secretary is prohibited by reason of such case from making the assessment or from collecting and -

(1) for assessment, 60 days thereafter, and

(2) for collection, 6 months thereafter.

*Internal Revenue Serv. (In re Clark)*, 184 B.R. 728 (Bankr.N.D.Tex.1995); *Gore v. United States (In re Gore)*, 182 B.R. 293 (Bankr.N.D.Ala.1995); *Saunders v. United States (In re Saunders)*, No. 94–23489–BKR–RBR, 1995 WL 865471 (Bankr.S.D.Fla. Dec. 26, 1995). These decisions, literally construe § 108(c) which addresses the tolling of *non-bankruptcy* statutes of limitations only. As such, the limitations periods found *within* the Bankruptcy Code, for example, § 507(a)(8)(A)(i) and § 523(a)(1)(B)(ii), are not extended by § 108(c). These courts also refused to allow § 105(a) to toll the time period unless there was proof of misconduct or abuse of the bankruptcy system by the debtors.

In the matter presently before the court, the debtors cite *Quenzer*, as controlling authority. The debtors argue that under *Quenzer*, § 108(c) cannot be employed to toll a "bankruptcy" limitations period, and that this court is precluded from employing § 105 to equitably achieve the same result. The debtor's reliance on *Quenzer* is *partially* misplaced. The court in *Quenzer* did not consider the equitable tolling power provided by § 105(a), because it was not argued by the parties at the trial level and was only raised on appeal.

Subsequent to publication of *Quenzer*, three bankruptcy courts within the Fifth Circuit have relied on § 105(a) to permit tolling. *See, In re Ramos*, 208 B.R. 655 (W.D.Tex. 1996); *In re Miller*, 199 B.R. 631 (Bankr. S.D.Tex.1996); and *In re Clark*, 184 B.R. 728 (Bankr.N.D.Tex.1995). In all three opinions, the courts found that the debtors' misconduct warranted exercise of the equity power conveyed by § 105(a) to toll the limitations period of § 507(a)(8)(A)(i) for the time that the debtors were in prior bankruptcies. Both *Miller* and *Clark*, added an additional six months to the tolling period pursuant to 26 U.S.C. § 6503(b) and (h). None of these cases dealt specifically with the two year period set forth in § 523(a)(1)(B)(ii), but the reasoning is precisely on point.

The IRS has alleged that the debtors dismissed their prior bankruptcy case and the dischargeability complaint only after they learned that the taxes would be clearly non-dischargeable because the applicable returns were filed within two years of the bankruptcy petition. The IRS has also alleged that the debtors waited to file their present Chapter 7 case eighty-two days after the dismissal of the first case solely to insure that the delinquent returns were filed outside the two year limitations period. The court in *In re Miller* appropriately pointed out the following:

> ...[T]he Bankruptcy Code was not designed to allow debtors to create a scheme of bypassing the Code's non-dischargeability provisions by filing a petition, letting the priority period expire, dismiss their case, and re-file again in order to discharge the taxes, thereby making themselves unreachable by the IRS. The sole purpose of assigning priority status to certain tax claims is to enhance the government's ability to collect such claim.

*In re Miller*, 199 B.R. at 634.

The calculated manner by which the debtors dismissed their prior case and refiled the present case produces the same result which the *Miller* decision, and countless others, seek to prevent. This court is of the opinion that the facts of this proceeding warrant invocation of the § 105(a) equitable power. As such, the court concludes that the two-year period of § 523(a)(1)(B)(ii) was tolled or suspended for the time that the debtors' previous bankruptcy case was pending, plus an additional six months after the dismissal pursuant to 28 U.S.C. § 6503(b) and (h). In keeping with the agreement of the parties, the court is ruling only on the tolling issue and declines at this time to address the debtors' contention that the IRS tax liens should be avoided.

An order will be entered contemporaneously with this opinion.